# United States Court of Appeals for the Federal Circuit

---

**RANDOLPH S. GURLEY,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2021-1490

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 19-1880, Judge Joseph L. Falvey, Jr.

---

Decided: January 20, 2022

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

JOSHUA E. KURLAND, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, MARTIN F. HOCKEY, JR.; Y. KEN LEE, BRYAN THOMPSON, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before TARANTO, BRYSON, and STOLL, *Circuit Judges.*

TARANTO, *Circuit Judge.*

After beginning to receive veterans' disability compensation benefits, Randolph S. Gurley was incarcerated for a felony for a short period. Not knowing of the incarceration until it ended, the Department of Veterans Affairs (VA) paid Mr. Gurley's full benefits during the period, even though 38 U.S.C. § 5313 prescribes a substantial reduction of payments to the veteran for certain incarceration periods. When VA learned of Mr. Gurley's incarceration after his release, it retroactively reduced the benefits for the now-ended incarceration period, and to recoup the overpayment it had made, VA withheld payment of continuing benefits for a time, as authorized by 38 U.S.C. § 5314. Mr. Gurley unsuccessfully appealed to the Board of Veterans' Appeals and the Court of Appeals for Veterans Claims (Veterans Court), contending that the statute does not permit a retroactive reduction for a period of incarceration that has already ended. Mr. Gurley renews his argument on appeal to us, but we agree with the Veterans Court that 38 U.S.C. § 5313 authorizes VA to make a post-incarceration decision to reduce benefits retroactively for the specified period of incarceration. We therefore affirm.

I

Mr. Gurley served in the United States Army between 1972 and 1974 (a period of war) and the Army National Guard between 1975 and 1982. As of 1997, VA was paying him service-connected-disability compensation benefits, pursuant to 38 C.F.R. § 4.30, at the 100 percent disability level based on individual unemployability. In 2011, Mr. Gurley was convicted of a felony, and he was incarcerated for nearly six months, from September 9, 2011 to March 1, 2012.

By statute, when a veteran is incarcerated for a felony conviction, the veteran "shall not be paid" the full amount of awarded compensation benefits "for the period beginning on the sixty-first day of such incarceration and ending on the day such incarceration ends." 38 U.S.C. § 5313(a)(1). In Mr. Gurley's situation, the payment had to be reduced from the 100% disability level to the 10% disability level, under 38 U.S.C. § 5313(a)(1)(A) and § 1114(a). Mr. Gurley, however, received his full benefits during the entirety of his incarceration, because VA did not learn of his incarceration until six days after his release, when VA compared its records with those of the Social Security Administration. After confirming Mr. Gurley's incarceration with the prison he had just left, VA notified Mr. Gurley that he had been overpaid benefits beginning on the 61st day of his incarceration (*i.e.*, November 8, 2011) and that VA would retroactively reduce his benefits for the period beginning on the 61st day and ending on his release (*i.e.*, March 1, 2012).

Mr. Gurley objected on the ground that he was no longer incarcerated. But VA proceeded to make the retroactive reduction of benefits for the specified period, informing Mr. Gurley that he had received an overpayment and would soon be given information about the exact amount and about repayment. Two weeks later, VA notified Mr. Gurley that the overpayment was $10,461 (a calculation not in dispute here) and that VA would reduce its payment of Mr. Gurley's current benefits "until the amount . . . overpaid is recouped." J.A. 108.

Mr. Gurley requested a waiver under 38 U.S.C. § 5302 (authorizing waivers of recovery of overpayments) and disputed the debt.[1] VA denied the requested waiver and

---

[1] Besides providing an opportunity for waiver, the statute allows VA, under specified circumstances, to pay ("apportion") amounts withdrawn from the veteran to family members. 38 U.S.C. §§ 5313(b), 5307. We have before

issued a Statement of the Case reiterating its debt determination. J.A. 68–69, J.A. 92–94. Mr. Gurley appealed only the debt determination, not the waiver denial. The Board rejected Mr. Gurley's challenge to VA's creation of the debt by the retroactive reduction of benefits for all but the first 60 days of the incarceration period. J.A. 18–26. The Board determined that VA properly established that an overpayment occurred and that a debt existed because it was undisputed that Mr. Gurley received his full benefits during his incarceration, to which he was not entitled under 38 U.S.C. § 5313. J.A. 19, 22–23.

Mr. Gurley appealed to the Veterans Court, which affirmed the Board's decision. *Gurley v. Wilkie*, 2020 WL 6065829 (Vet. App. Oct. 15, 2020). It concluded that the retroactive benefit reduction was proper under 38 U.S.C. § 5313 and recoupment of the overpayment through withholding of continuing benefit payments was proper under at least 38 U.S.C. § 5314. *Gurley*, 2020 WL 6065829, at *2–5. Mr. Gurley timely appealed to this court.

II

Under 38 U.S.C. § 7292(a), this court has jurisdiction to address the Veterans Court's interpretation of a statute. Mr. Gurley presents one properly preserved argument—that the Veterans Court misconstrued 38 U.S.C. § 5313 to allow VA to declare an overpayment debt for the period of incarceration even after the veteran is no longer incarcerated. Mr. Gurley contends that § 5313 permits VA to act only during the period of incarceration. We review the Veterans Court's statutory interpretation de novo. *Cameron v. McDonough*, 1 F.4th 992, 995 (Fed. Cir. 2021). We agree with the Veterans Court, and disagree with Mr. Gurley, on

---

us no application of that provision, which is invokable by family members to obtain money no longer due the veteran. *See Batcher v. Wilkie*, 975 F.3d 1333, 1338 (Fed. Cir. 2020).

the proper answer to the question of statutory interpretation before us.

Section 5313 provides, in relevant part:

(a)(1) To the extent provided in subsection (d) of this section, any person who is entitled to compensation or to dependency and indemnity compensation and who is incarcerated in a Federal, State, local, or other penal institution or correctional facility for a period in excess of sixty days for conviction of a felony shall not be paid such compensation or dependency and indemnity compensation, for the period beginning on the sixty-first day of such incarceration and ending on the day such incarceration ends, in an amount that exceeds–

(A) in the case of a veteran with a service-connected disability rated at 20 percent or more, the rate of compensation payable under section 1114(a) . . . .

38 U.S.C. § 5313(a)(1).

This statute has a straightforward meaning in the respect at issue. It creates a rule that a veteran convicted of a felony "shall not be paid compensation [including disability compensation]. . . in an amount that exceeds" specified rates "*for* the period beginning" on the 61st day of incarceration "and ending on the day" the incarceration ends. *Id.* (emphasis added). The only temporal aspect of the provision is one that addresses the period "for" which the veteran is to receive benefits. The provision does not use language that addresses the time at which VA must make its reduction decision regarding those benefits. It addresses payments "for" the incarceration period, providing for specified reductions.

The remainder of § 5313 does not support reading into § 5313(a)(1) a requirement that VA act before incarceration ends or lose the ability to limit the payments to which the veteran is entitled during incarceration. *See, e.g., id.*

§ 5313(a)(2) (excluding periods during which the convicted felon "is participating in a work-release program or is residing in a halfway house"); § 5313(b) (addressing apportionment); § 5313(c) (barring assignment of total disability based on individual unemployability during incarceration); § 5313(d) (applying (a) to certain events based on initial October 1980 enactment of provision); § 5313(e) (including compensation under 38 U.S.C. § 1151). Moreover, Mr. Gurley points to no other statutory provision that bars retroactive benefit reductions generally or in his situation. In fact, 38 U.S.C. § 5112(a) contemplates retroactive reductions when it states a general rule that "the effective date of reduction . . . shall be fixed in accordance with the facts found," subject to specified exceptions, *id.* § 5112(b), not invoked here. And § 5314 specifically contemplates VA's recovery of overpayments through withholding from future benefits, while § 5302 contemplates case-specific waivers (again, not at issue here) to allow moderation of the effects of such recovery where warranted.

There is an evident reason to give § 5313(a) its straightforward meaning, which allows retroactive reduction. VA might not have the contemporaneous knowledge of a particular veteran's incarceration needed to take the initiative of reducing benefits by the 61st day. Congress adopted the provision in 1980—originally as 38 U.S.C. § 3113—as part of the Veterans' Disability Compensation and Housing Benefits Amendments of 1980, Pub. L. No. 96-385, § 504, 94 Stat. 1528, 1534. Nothing in the statute, and nothing we are aware of in the legislative history, suggests that Congress expected VA to have the contemporaneous knowledge of a veteran's incarceration required to broadly ensure prospective reduction by the 61st day.

More affirmatively, we have recognized the policy inherent in § 5313: "Congress did not see the wisdom in providing substantial benefits to disabled veterans when at the same time the taxpayers of this country are spending additional thousands of dollars to maintain these same

individuals in penal institutions." *Mulder v. McDonald*, 805 F.3d 1342, 1348 (Fed. Cir. 2015) (cleaned up). That policy applies regardless of whether the reduction for the incarceration period is implemented by VA during incarceration or after incarceration. And, although a veteran's family members may depend on the veteran's compensation benefits, Congress expressly provided, in § 5313(b), a mechanism for family members to seek to have apportioned to them amounts withdrawn from the veteran under § 5313(a). That provision, which is not in play here, reinforces the simple policy of § 5313(a) itself, which supports the Veterans Court's straightforward interpretation.

For those reasons, we agree with the Veterans Court that § 5313 does not require VA to act during the incarceration period to implement the mandated benefits reduction for the specified part of that period.

## III

Mr. Gurley additionally argues that VA did not comply with certain procedural requirements of § 5314 and of 38 C.F.R. § 1.911(c)–(d), the latter implementing general statutory authority for government debt collection, *see* 31 U.S.C. §§ 3701, 3711. Appellant's Opening Br. at 14–18. But Mr. Gurley did not raise these arguments in the Veterans Court. *See Gurley*, 2020 WL 6065829, at *5 ("Mr. Gurley does not argue that VA ignored any of these requirements."). They are thus forfeited. *Personal Audio, LLC v. CBS Corp.*, 946 F.3d 1348, 1354 (Fed. Cir. 2020).

## IV

Because we agree with the Veterans Court that 38 U.S.C. § 5313 does not require VA to act during the period of incarceration, we affirm.

The parties shall bear their own costs.

**AFFIRMED**